FENNEMORE CRAIG, P.C.
Cathy L. Reece (No. 005932)
Nicolas B. Hoskins (No. 023277)
3003 North Central Avenue
Suite 2600
Phoenix, AZ 85012-2913
Telephone: (602) 916-5343
Facsimile: (602) 916-5543
Email: creece@fclaw.com
nhoskins@fclaw.com

Proposed Attorneys for The Official Committee
of Investors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>MORTGAGES LTD.,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:08-bk-07465-RJH<br><br>**VERIFIED STATEMENT AND DECLARATION PURSUANT TO RULE 2014 OF ALVAREZ & MARSAL DISPUTE ANALYSIS & FORENSIC SERVICES, LLC, AS PROPOSED FINANCIAL ADVISORS FOR THE OFFICIAL COMMITTEE OF INVESTORS, BY EDWARD M. MCDONOUGH** |

STATE OF ARIZONA )
                 )
County of Maricopa )

EDWARD M. McDONOUGH, being first duly sworn, deposes and says:

1. I am the Managing Director of Alvarez & Marsal Dispute Analysis & Forensic Services, LLC ("Alvarez & Marsal"), which is located at 2355 East Camelback Road, Suite 805, Phoenix, Arizona 86016, and which is proposed to be retained as financial advisor for the Official Committee of Investors in the above-captioned matter (the "Investor Committee").

2. Alvarez & Marsal's rates are set forth in the Engagement Letter attached as

Exhibit 1 to the Application for Order Authorizing and Approving the Employment of Alvarez & Marsal (the "Application").

3. To the best of my knowledge, neither Alvarez & Marsal nor I have any connection with the Debtor, its largest creditors, or any other party-in-interest, or any of their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the Unites States Trustee, except that Alvarez & Marsal served as the financial advisors to the Unofficial Investor Committee, but terminated that relationship when the Trustee formed the Investor Committee.

4. I do not believe the foregoing presents a material conflict with Alvarez & Marsal's providing financial advisory services to the Investor Committee.

5. Alvarez & Marsal members and employees may have had some personal or professional relationships with attorneys, accountants, restructuring advisors, employees or officers, or parties-in-interest in these cases. I do not have any knowledge of any such relationship that is material. To the extent that it is determined that any additional matters should be disclosed, the undersigned will supplement this Statement.

6. Alvarez & Marsal is a disinterested party as that term is defined by 11 U.S.C. § 101. It is not a creditor, equity security holder or an insider of the Debtor. Alvarez & Marsal will act in the best interest of the Investor Committee. Alvarez & Marsal neither represents nor holds an interest adverse to the interest of the estate with respect to the matter on which Alvarez & Marsal is employed.

7. Alvarez & Marsal is willing to serve as the financial advisor for the Investor Committee on the terms set forth in Exhibit 1 to the Application, which includes the Engagement Letter and Indemnity.

DATED this 8th day of August, 2008.

_____
Edward M. McDonough

SUBSCRIBED AND SWORN TO before me this 8th day of August, 2008, by EDWARD M. MCDONOUGH.

OFFICIAL SEAL
SHARON J. FAIRCHILD
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires March 14, 2011

_____
Notary Public

My Commission Expires:

March 14, 2011

FENNEMORE CRAIG, P.C.
PHOENIX

2094264

Case 2:08-bk-07465-RJH   Doc 334   Filed 08/11/08   Entered 08/11/08 18:36:01   Desc
Main Document   Page 3 of 13

| | |
|---|---|
| 1 | COPY of the foregoing mailed or emailed |
| 2 | this 11th day of August, 2008 to: |
| 3 | Bradley J. Stevens |
| | Carolyn J. Johnsen |
| 4 | JENNINGS, STROUSS & SALMON, P.L.C. |
| | The Collier Center, 11th Floor |
| 5 | 201 East Washington St. |
| | Phoenix, AZ 85004-2385 |
| 6 | Email: bstevens@jsslaw.com |
| | Email: cjjohnsen@jsslaw.com |
| 7 | |
| | Attorneys for the Debtor |
| 8 | |
| 9 | |
| | U.S. Trustee's Office |
| 10 | 230 North First Avenue, Suite 204 |
| | Phoenix, AZ 85003 |
| 11 | |
| 12 | /s/ Susan Stanczak-Ingram |

FENNEMORE CRAIG, P.C.
PHOENIX

2094264



2355 East Camelback Road, Suite 805, Phoenix, AZ 85016
Phone: 602.459.7000 Fax: 602.459.7001
www.alvarezandmarsal.com

August 1, 2008

Jon Bliven
Chairman of the Official Investors
Committee of Mortgages Ltd.

Re: **Mortgages Ltd. Bankruptcy**

Dear Mr. Bliven:

This letter agreement ("Agreement") confirms and sets forth the terms and conditions of the engagement of Alvarez & Marsal Dispute Analysis and Forensic Services, LLC ("A&M") by the Official Committee of Investors (the "Committee") appointed in the chapter 11 bankruptcy case of Mortgages Ltd. (the "Debtor") to provide certain advisory services, as described below:

(1) Advisory Services
In connection with this engagement, the Committee has requested that A&M provide the following services:

(a) *Review and evaluate the current and prospective financial, and operational condition of the Debtor, including but not limited to cash receipts and disbursement forecasts, short term and long term business plans and various plans of reorganization that may be considered or pursed by the Debtor, review appraisals, DIP financing, plans and effort to sell assets, recapitalize or reorganize the Debtor.*

(b) *Assist the Committee and its counsel in evaluating and responding to various development or motions during the course of the Debtor's Chapter 11 including providing expert testimony as may be acceptable to A&M.*

(c) *Provide other services that may be requited by the Committee and as may also be acceptable to A&M.*

Edward M. McDonough, a Managing Director of A&M, will be responsible for the overall engagement. He will be assisted by other A&M personnel. A&M personnel providing services to the Committee may also work with other A&M clients in conjunction with unrelated matters.

In connection with the services to be provided hereunder, from time to time A&M may utilize the services of employees of its affiliates. Such affiliates are wholly owned by A&M's parent company and employees.

**PRIVILEGED AND CONFIDENTIAL**

(2) <u>Fees and Expenses</u>

      A&M will receive fees based on their standard hourly rates. Edward M. McDonough's billing rate is $550/hour.

In addition, A&M will be reimbursed for its reasonable out-of-pocket expenses (which shall be charged at cost) incurred in connection with this engagement, such as travel, lodging, duplicating, research, messenger and telephone charges. In addition, A&M shall be reimbursed for the reasonable fees and expenses of its counsel incurred in connection with the preparation, approval and enforcement of this Agreement.

Fees and expenses will be billed on a monthly basis, and invoices shall be presented simultaneously to the Debtor and the Committee. We understand that the Debtor will pay our invoices, based on the procedures in place in the bankruptcy case.

It is our policy in these cases to hold a retainer throughout the course of our engagement. Given the magnitude and scope of the requested services, we believe that a retainer of $50,000 would be appropriate in this instance. We understand that the Debtor will be responsible for payment of the retainer, and said retainer will be funded through the DIP loan. The retainer will be credited against any amounts due at the termination of this engagement and, to the extent of any excess, returned upon the satisfaction of all obligations hereunder.

In no event shall the Committee or any of its members be liable in any capacity for any amounts owed to or by A&M in connection with this engagement and this Agreement, including, without limitation, any of our invoices, expenses, costs, damages or other liabilities in connection with this engagement.

(3) <u>Term</u>
The term of A&M's engagement hereunder shall commence on the date hereof and may be terminated without cause at any time by either A&M or the Committee, upon 10 days prior written notice to the other party; <u>provided, however</u>, that no such termination shall affect the right of A&M to receive any fees and reimbursement of out-of-pocket expenses that have accrued prior to such termination. A&M normally does not withdraw from an engagement unless the Committee misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for A&M to continue to represent the Committee, or unless other just cause exists.

(4) <u>Access to Information / Other Issues</u>
In order for A&M to perform the services set forth above, it will be necessary for A&M personnel to have access to certain books, records and reports of the Debtor and to have discussions with the Debtor's personnel. Accordingly, it is understood that the Debtor has agreed to cooperate with A&M personnel and to make available at reasonable times and locations their personnel and customarily provided reports. To the extent A&M is

not given the Debtor's cooperation or access to the Debtor's personnel, books and records and other sources of data, A&M's ability to provide the services set forth above will be limited.

Because of the limitations in this engagement, the depth of A&M's analysis and verification of the data are limited. It is understood that A&M is not being requested to perform an audit and that A&M is entitled to rely on the accuracy and validity of the data disclosed to A&M or supplied to A&M by employees and representatives of the Debtor. A&M is not updating, nor is A&M under any obligation to, update data submitted to A&M or review any other areas unless specifically requested to do so.

You understand that the services to be rendered will include a review and assessment of projections and other forward looking statements and that numerous factors can affect the actual results of the Debtor's operations, which may materially and adversely differ from those projections and other forward looking statements. A&M makes no representation or guarantee that any business plan or restructuring alternative is the best course of action.

(5) <u>Attorney Work Product</u>
We understand that our work will be done at the direction of the Committee, and that work performed by us as part of this engagement, including, without limitation, any reports we may prepare, is privileged and confidential and is deemed to constitute an attorney work product which we will not disclose to any other third-party (other than Fennemore Craig, P.C., the Committee's legal counsel, and the Committee and its members) except at the direction of the Committee or otherwise in accordance with the terms hereof.

(6) <u>Conflicts</u>

A&M is not currently aware of any relationship that would create a conflict of interest with Committee Members or those parties-in-interest of which you have made us aware. Because A&M is a consulting firm that serves client on a national basis in numerous cases, both in and out of court, it is possible that A&M may have rendered or will render services to or have business associations with other entities or people which had or have or may have relationships with the Committee Members. In the event you accept the terms o this engagement, A&M will not represent, and A&M has not represented, the interests of any such entities or people in connection with this matter.

(7) <u>Confidential Information</u>
We recognize and acknowledge that certain information and documentation which we may receive in connection with our engagement is proprietary and confidential, including, without limitation, nonpublic financial and business information and documents hereafter furnished to us by the Debtor or by the Committee. By signing this Agreement, we confirm and agree that, without the prior consent of the Committee, we will not disclose, distribute, publish or release to any third party (excluding Fennemore

**PRIVILEGED AND CONFIDENTIAL**

Craig, P.C., and the Committee or its members) any nonpublic information or documents now or hereafter received or obtained by us in this engagement, except as required by law, subpoena, or other process and as to which we will, if possible, provide the Committee prior notice. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of acts by us.

(8) <u>Limitation on Damages</u>
As to the services that the Committee has requested and A&M has agreed to provide as set forth in this Agreement, the total aggregate liability of A&M under this Agreement to the Committee and their successors and assigns, shall be limited to the actual damages incurred by the Committee or their successors or assigns, respectively. In no event will A&M or any of its affiliates be liable to the Committee or their successors or assigns for consequential, special or punitive damages, including loss of profit, data, business or goodwill.

In no event shall A&M incur any liability to the Debtor (including its estates), its successors and assigns. Further, in no event shall the total aggregate liability of A&M under this Agreement to the Committee, the Debtor and their successors and assigns, exceed the total amount of fees received and retained by A&M hereunder.

Notwithstanding the foregoing, the Debtor acknowledges that A&M, as advisor to the Committee is not providing any services to the Debtor and accordingly owes no duty to the Debtor.

(9) <u>Certain Acknowledgements/ Indemnification</u>
The Debtor acknowledges and agrees that the reports and any oral advice A&M may give are solely for the benefit of the Committee and that no other party (other than the Fennemore Craig, P.C.) is entitled to receive or rely on such reports or advice.

The attached indemnification agreement is incorporated herein by reference and shall be executed by the parties upon the acceptance of this Agreement. Termination of this engagement shall not affect any of these indemnification provisions, which shall remain in full force and effect.

(10) <u>Non-Solicitation</u>
The Committee, on behalf of its members, and the Debtor agree that, until one year subsequent to termination of this engagement, it will not solicit, recruit or hire any employee of A&M, while employed by A&M, who worked on this engagement ("Solicited Person"). Should a party extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the party extending such offer equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee. The fee

shall be payable to A&M by the party breaching this provision at the time of the Solicited Person's acceptance of employment or engagement.

(11)   Miscellaneous
This Agreement (a) shall be governed and construed in accordance with the laws of the State of New York, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter hereof; and (c) may not be amended or modified except in writing executed by the parties hereto (not including the Debtor; <u>provided</u> that the Debtor's obligations under paragraphs 2,4, 8-11 hereof may not be modified without its consent). Each of the parties hereto (including the Debtor) agrees (a) to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of A&M hereunder; (b) that, to the extent permitted by applicable law, any Federal Court sitting within the Southern District of New York shall have exclusive jurisdiction over any litigation arising out of this Agreement; (c) to submit to the personal jurisdiction of the Courts of the United States District Court for the Southern District of New York; and (d) waives any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of New York for any litigation arising in connection with this Agreement. Notwithstanding anything herein to the contrary, A&M may reference or list the Committee's name and/or a general description of the services in A&M's marketing materials, including, without limitation, on A&M's website.

Please sign and return a copy of this engagement letter signifying your agreement with the terms and provisions herein.

Very truly yours,



**ALVAREZ & MARSAL DISPUTE ANALYSIS AND FORENSIC SERVICES, LLC**

By: __Edward M. McDonough__

Title: __Managing Director__

Accepted & Agreed
THE OFFICIAL COMMITTEE OF INVESTORS
For Mortgages Ltd. and affiliated debtors

By: _____
       Chairperson

Accepted and Agreed as to paragraph 2,4,8-11 only

Mortgages Ltd., debtor *in possession*
For itself

By: _____
       Name:
       Title:

ALVAREZ & MARSAL

# INDEMNIFICATION AGREEMENT

This indemnity is made part of an agreement, dated **August 1, 2008** (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement") among Alvarez & Marsal Dispute Analysis and Forensic Services, LLC ("A&M"), *Mortgages Ltd.* (the "Company") and the *Official Committee of Investors appointed in the Company's cases* (the "Committee"), for services to be rendered to the Company by A&M.

A. The Company agrees to indemnify and hold harmless each of A&M, its affiliates and their respective members, managers, shareholders, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. The Company and the Committee also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or the Committee for or in connection with the engagement of A&M, except to the extent for any such liability for losses, claims, damages, liabilities or expenses that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. The Company and the Committee further agree that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B. These indemnification provisions shall be in addition to any liability which the Company or the Committee may otherwise have to the Indemnified Parties.

C. If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company with reasonable promptness; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action. The Company

-1-

Case 2:08-bk-07465-RJH    Doc 334    Filed 08/11/08    Entered 08/11/08 18:36:01    Desc
Main Document    Page 11 of 13

shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefore, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Company hereby accept its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore. If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company or the Committee, the Company or the Committee may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company or the Committee, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company or the Committee such counsel is unable to represent both the Indemnified Party and the Company or the Committee, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefore. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.     In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company or the Committee, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement. No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.     In the event the Committee and A&M seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which A&M would continue to be engaged by the Committee, the Company shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefore and regardless of whether such retention or authorization is approved by any court. The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including

attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.  Neither termination of the Agreement nor termination of A&M's engagement (nor the conversion of the Company's chapter 11 case to a chapter 7 case) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.


Mortgages Ltd.

Debtor in possession, for itself

By:_____

_____

ALVAREZ & MARSAL DISPUTE ANALYSIS AND FORENSIC SERVICES, LLC

By: *(signature)* _____

Managing Director


Official Committee of Investors appointed in the Mortgages Ltd. chapter 11 case

By: *(signature)* _____

Chairman