Mark A. Nadeau (011280)
DLA Piper LLP (US)
2415 East Camelback, Suite 700
Phoenix, Arizona 85016-4245
Telephone: (480) 606-5100
Facsimile: (480) 606-5101
mark.nadeau@dlapiper.com

Proposed Special Real Estate and
Litigation Counsel for the Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Mortgages, Ltd.,<br><br>      Debtor. | Chapter 11<br><br>Case No. 2:08-bk-07465-RJH<br><br>**AFFIDAVIT OF MARK A. NADEAU IN SUPPORT OF DEBTOR'S APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF DLA PIPER LLP (US) AS SPECIAL REAL ESTATE AND LITIGATION COUNSEL FOR THE DEBTOR *NUNC PRO TUNC* TO OCTOBER 8, 2008** |

State of Arizona  )
         ) ss:
County of Maricopa )

  MARK A. NADEAU, being duly sworn, deposes and states as follows:

  1.  I am a partner of the law firm of DLA Piper LLP (US) ("**DLA Piper**"), which maintains an office at 2415 East Camelback, Suite 700, Phoenix, Arizona 85016-4245. I am an attorney-at-law, duly admitted and in good standing to practice in the State of Arizona and before the United States District Court for the District of Arizona.

CENTRAL\30985330.5
3183547v1(60069.1)

Case 2:08-bk-07465-RJH  Doc 865  Filed 10/23/08  Entered 10/23/08 09:21:01  Desc
            Main Document  Page 1 of 6

2. I submit this affidavit in support of the *Application for Order Authorizing Employment and Retention of DLA Piper LLP (US) as Special Real Estate and Litigation Counsel for the Debtor Nunc Pro Tunc to October 8, 2008* (the "**Application**") filed by Mortgages, Ltd., the debtor and debtor in possession herein (the "**Debtor**"), in accordance with the requirements of sections 328, 329 and 504 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure. Except as otherwise indicated, all facts set forth in this affidavit are based upon my personal knowledge and my review of relevant documents. If I were called upon to testify, I would testify consistently with the facts set forth in this affidavit.

### Services to be Rendered by DLA Piper

3. Mortgages, Ltd. on behalf of itself and as Agent on behalf of various persons and entities (collectively, the "**Debtor**") seeks to retain DLA Piper to perform the following services:

    (a) Negotiate with, collect from and litigate with problem borrowers, any guarantors of loans and other parties implicated in the shortfall of funds in the estate or the failure to repay the estate. Routine foreclosure matters will continue to be handled by foreclosure counsel, subject to such supervision and involvement of DLA Piper as the Debtor's management may deem appropriate under the circumstances pertaining to specific loans or pools of loans.

    (b) Investigate the sources and causes of the Debtor's losses and damages to its business and assets, and pursue avenues of recovery, including litigation, against appropriate parties.

    (c) Represent the Debtor in the National Retail Litigation and the PDG Litigation (each as defined in the Application), and in such other litigation as the Debtor may request.

4. The attorneys at DLA Piper who will render services on behalf of the Debtor in connection with this case are knowledgeable and experienced in the areas of real estate lending,

financial litigation and bankruptcy litigation, as well as other areas that may arise in connection with this case, and are well qualified to represent the interests of the Debtor in this case.

## DLA Piper's Connections with Potential Parties in Interest

5. DLA Piper utilizes a number of procedures to determine its connections, if any, to parties in interest that may have connections to a debtor client. Consistent with these procedures, the following actions were taken to identify parties in interest in this case that may have connections to the Debtor and DLA Piper's connections with such parties in interest:

(a) Upon and since its retention, DLA Piper has conducted conflict reviews with respect to the following categories of potential parties in interest are as follows:

(i) List of Creditors Holding 20 Largest Unsecured Claims;
(ii) List of Current Borrowers from the Debtors; and
(iii) An iteration of the Service List used in the Chapter 11 case.

(b) As part of that review, DLA Piper compared each of the foregoing potential parties in interest to the names in DLA Piper's master electronic database of current and former clients. DLA Piper's client database generally includes the name of each client of the firm, the name of each party who is or was known to be adverse to such client of the firm, the name of each party that has or had a substantial role with regard to the subject matter of DLA Piper's representation and the names of the DLA Piper attorneys who are or were primarily responsible for matters for such clients.

(c) Known connections between former or current clients of DLA Piper and potential parties in interest (including former client relationships dating back to at least three years prior to the date of this affidavit) were compiled for purposes of preparing this affidavit.

6. Based on information obtained from DLA Piper's client database, I have thus far ascertained that DLA Piper and its partners, counsel and associates: (a) are not creditors, equity security holders or "insiders" of the Debtor (as such term is defined under section 101(31) of the Bankruptcy Code); (b) are not, and within two years prior to the Petition Date were not, directors, officers or employees of the Debtor; (c) have no known connection with the Debtor,

any of the Debtor's creditors, any other party in interest, except as set forth herein; and (d) do not hold or represent any interest materially adverse to the Debtor's estates. I have confirmed, however, that DLA Piper does represent in unrelated matters one or more persons or entities who are connected with a borrower from the Debtor, and an affiliate of at least one creditor of the Debtor in each case in matters unrelated to this Chapter 11 case. The Firm will ascertain more fully the nature of these connections and the level of fees generated from any such clients or affiliates in 2006, 2007 and 2008, which is unlikely in any instance to approach 1% of DLA Piper's annual revenue. Review of these matters is ongoing.

7. Based on the foregoing, I believe that DLA Piper is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

8. DLA Piper has in the past represented, currently represents and likely in the future will represent certain creditors and other parties in interest in matters unrelated to the Debtor or the Debtor's chapter 11 case.

9. As noted above, DLA Piper has conducted a general investigation to determine whether any of its personnel: (a) is or was a director, officer or employee of the Debtor; (b) owns an equity interest in the Debtor; or (c) holds a claim against the Debtor. DLA Piper has not, however, investigated whether any of its personnel: (a) indirectly owns, through a public mutual fund or other investment vehicle over which investors have no control of investment decisions, equity securities of any of the Debtor; or (b) has engaged in any ordinary course consumer transaction with the Debtor. If any such relationship does exist, I do not believe it would impact upon DLA Piper's disinterestedness or otherwise give rise to a finding that DLA Piper holds or represents an interest adverse to the Debtor's estate.

10. DLA Piper will conduct periodic conflict reviews and, should the need arise, it will promptly update the Debtor and the Court with respect to any material developments or relationships that may come to its attention. In particular, DLA Piper will supplement this affidavit if it becomes aware of any relationship that may adversely affect its representation of the Debtor in this case or which otherwise should be disclosed under applicable law. Likewise, DLA Piper will supplement this affidavit if it is advised of any trading of claims against or interests in the Debtor that may adversely affect its representation of the Debtor in this case or which otherwise should be disclosed under applicable law.

## DLA Piper's Compensation

11. DLA Piper has represented the Debtor since October 8, 2008 as an ordinary course professional to begin its review of issues pertinent to this representation. DLA Piper has not received any other payment from the Debtor or any other source in connection with this case.

12. Subject to approval of the Court and all applicable laws, rules and guidelines, the Debtor has agreed to compensate DLA Piper based on its customary hourly rates in effect on the date the services are rendered, plus reimbursement of the actual and necessary expenses that DLA Piper incurs in connection with its representation of the Debtor. The following table identifies the principal DLA Piper professionals who currently are anticipated to render services on behalf of the Debtor in this case and their current hourly rates:

| Name of Professional | Hourly Rate (2008) |
|---|---|
| Forrest B. Lammiman (Partner) | $725.00 |
| Mark A. Nadeau (Partner) | $690.00 |
| Robert J. Odson (Partner) | $690.00 |
| Nicholas M. Miller (Associate) | $465.00 |
| Richard Kovacik (Associate) | $385.00 |
| Legal Assistant To Be Assigned | $220.00 to $250.00 |

13. As needed and appropriate, other DLA Piper professionals will render services on behalf of the Debtor in connection with this case at their standard hourly rates. The standard hourly rates for the services of professionals at DLA Piper are increased from time to time, typically at the beginning of each new calendar year.

14. Other than as set forth above, there is no proposed arrangement to compensate DLA Piper in connection with its representation of the Debtor in this case. Furthermore, DLA Piper has not agreed to share with any other person or entity any of the compensation received by DLA Piper in connection with its representation of the Debtor in this case.

15. I will amend and/or supplement this affidavit, as appropriate, if I discover that any of the statements made herein are no longer correct or if there is any material change or circumstance warranting additional disclosure.

I HEREBY DECLARE UNDER PENALTY OF PERJURY AND UPON PERSONAL KNOWLEDGE THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: Phoenix, Arizona
October 23, 2008

    /s/ Mark A. Nadeau
Mark A. Nadeau
DLA Piper LLP (US)