UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 05 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: MORTGAGES LTD., | No. 12-15229 |
| Debtor | D.C. Nos. 2:11-cv-00853-RCJ, 2:08-bk-07465-RJH |
| REV OP GROUP, | U.S. District Court for Arizona, Phoenix |
| Appellant, | **MANDATE** |
| v. | |
| ML MANAGER LLC, | |
| Appellee. | |

| | |
|---|---|
| REV OP GROUP, | No. 12-15438 |
| Appellant, | D.C. No. 2:10-cv-01819-RCJ |
| v. | U.S. District Court for Arizona, Phoenix |
| ML MANAGER LLC, an Arizona limited liability company, | |
| Appellee, | |
| MORTGAGES LTD., | |
| Debtor - In Re. | |

In the Matter of: MORTGAGES LTD.,

        Debtor,

_____

 BEAR TOOTH MOUNTAIN
HOLDINGS, L.L.P.; et al.,

        Appellants,

  v.

ML MANAGER LLC,

        Appellee.

No. 12-16293

D.C. No. 2:10-cv-01917-RCJ
U.S. District Court for Arizona,
Phoenix

---

In re: MORTGAGES LTD.,

        Debtor,

_____

 QUEEN CREEK XVIII, L.L.C.,

        Appellant,

  v.

ML MANAGER LLC,

        Appellee.

No. 12-16725

D.C. No. 2:12-cv-00036-RCJ
U.S. District Court for Arizona,
Phoenix

    The judgment of this Court, entered November 12, 2014, takes effect this date.

    This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

Costs are taxed against the appellee in the amount of $3698.00.

FOR THE COURT:
Molly C. Dwyer
Clerk of Court

Synitha Walker
Deputy Clerk



FILED

NOV 12 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: MORTGAGES LTD., | No. 12-15229 |
| Debtor, | D.C. Nos. 2:11-cv-00853-RCJ<br>2:08-bk-07465-RJH |
| REV OP GROUP, | |
| Appellant, | MEMORANDUM[*] |
| v. | |
| ML MANAGER LLC, | |
| Appellee. | |
| REV OP GROUP, | No. 12-15438 |
| Appellant, | D.C. No. 2:10-cv-01819-RCJ |
| v. | |
| ML MANAGER LLC, an Arizona limited<br>liability company, | |
| Appellee, | |
| MORTGAGES LTD., | |

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

| | |
|---|---|
| Debtor - In Re. | |

| | |
|---|---|
| In the Matter of: MORTGAGES LTD., | No. 12-16293 |
| Debtor, | D.C. No. 2:10-cv-01917-RCJ |
| BEAR TOOTH MOUNTAIN HOLDINGS, L.L.P.; et al., | |
| Appellants, | |
| v. | |
| ML MANAGER LLC, | |
| Appellee. | |

| | |
|---|---|
| In re: MORTGAGES LTD., | No. 12-16725 |
| Debtor, | D.C. No. 2:12-cv-00036-RCJ |
| QUEEN CREEK XVIII, L.L.C., | |
| Appellant, | |
| v. | |
| ML MANAGER LLC, | |
| Appellee. | |

2

Appeal from the United States District Court
for the District of Arizona
Robert Clive Jones, District Judge, Presiding

Argued and Submitted January 16, 2014
San Francisco, California

Before: WALLACE and BYBEE, Circuit Judges, and GETTLEMAN, Senior District Judge.[**]

In two Opinions filed with this Memorandum, we address three of the six appeals filed by Rev Op Group, objecting investors to certain decisions made by ML Manager LLC (ML Manager), which manages and operates the loan portfolio of bankrupt debtor Mortgages Ltd. In this Memorandum, we address the other three appeals, which are from district court affirmances of four orders by the bankruptcy court that involve different legal issues than those in the two Opinions. Pursuant to the Declaratory Judgment of the bankruptcy court, ML Manager sold four properties of the estate, over Rev Op Group's objection, with the bankruptcy court's approval. Rev Op Group appealed each approval to the district court, which affirmed. Rev Op Group filed timely notices of appeal. We have jurisdiction over these appeals under 28 U.S.C. § 158(d)(1), and dismiss the appeals of these sales orders as equitably moot.

We treat sales orders differently than the orders subject to the other appeals for purposes of equitable mootness. Appeals from unstayed orders approving a sale

to a good faith purchaser are moot except when the sale is subject to a state right of redemption, even if the appellant sought a stay and otherwise diligently exercised its appellate rights. *In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1172–73 (9th Cir. 1988).

Rev Op Group sought stays of two of the sales orders in the bankruptcy and district courts, but it could not obtain stays because of the high cost of the calculated bond. Therefore, none of the sales orders Rev Op Group now challenges were stayed. Arizona does not have a state right of redemption. *Mid Kansas Fed. Sav. & Loan Ass'n of Wichita v. Dynamic Dev. Corp.*, 804 P.2d 1310, 1315 n.3 (Ariz. 1991) (in banc).

The bankruptcy court specifically found that the purchasers of the Citi Lofts and Zacher Properties acted in good faith, and the district court affirmed that finding. We accept those factual findings because they are not "clearly erroneous." *In re Filtercorp, Inc.*, 163 F.3d 570, 577 (9th Cir. 1998). The bankruptcy court did not make "explicit finding[s] of good faith" for the purchasers of the University and Ash and Dysart Properties. Nonetheless, like in *Onouli-Kona*, we still conclude those purchasers bought in good faith as a matter of law, because Rev Op Group has never argued or shown that the purchasers bought with "fraud, collusion or an attempt to take grossly unfair advantage of other bidders." *Onouli-Kona*, 846 F.2d

4

at 1173–74 (citation and alterations omitted). Thus, these appeals of unstayed sales orders to good faith purchasers are moot.

Rev Op Group makes three arguments to the contrary, which we reject. First, even though in our opinion in *Rev Op Group v. ML Manager LLC*, Nos. 12-15229, 12-15438, 12-16293 & 12-16725 we reverse the legal basis for the sales, appeals of unstayed sales orders to good faith purchasers are moot under the broader "bankruptcy mootness rule" that complements bankruptcy law regardless of whether the sales should have been made. *Id.* at 1172.

Second, even if the purchasers of the properties actually or constructively knew of Rev Op Group's disputes against ML Manager's authority, and thus bought the properties subject to Rev Op Group's claim under Arizona law, these appeals are moot because once Rev Op Group failed to obtain stays of the sales it "accepted the sale[s] as a final distribution from the collective proceeding." *Id.* at 1174. Any Arizona law that purports to retain Rev Op Group's interest in the properties "preserved no rights of [Rev Op Group] that remained intact after [Rev Op Group's] failure to obtain a stay." *Id.*

Finally, Rev Op Group's legal citations are obviously distinguishable. Our decision in *Goodwin v. United States*, 935 F.2d 1061 (9th Cir. 1991) does not apply here, because that case was decided under the Internal Revenue Code, which

has "no similar [bankruptcy] mootness provision." *Id.* at 1064. Moreover, we are not bound by, nor are we required to defer to, the Bankruptcy Appellate Panel's decision in *In re PW, LLC*, 391 B.R. 25 (B.A.P. 9th Cir. 2008). Regardless, that decision – which "reattach[ed]" the interests of junior lien holders to a property after it was sold "free and clear" – is inapplicable, because in that case all affected parties were "before the court, and no third-party action [was] required to reestablish" the junior lienholders' interests, whereas here, the third party purchasers are not before us. *Id.* at 34.

**APPEALS DISMISSED.**

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN THE MATTER OF: MORTGAGES LTD., *Debtor*, | No. 12-15229 |
| | D.C. Nos. 2:11-cv-00853-RCJ 2:08-bk-07465-RJH |
| REV OP GROUP, *Appellant*, | |
| v. | |
| ML MANAGER LLC, *Appellee.* | |
| REV OP GROUP, *Appellant*, | No. 12-15438 |
| v. | D.C. No. 2:10-cv-01819-RCJ |
| ML MANAGER LLC, an Arizona limited liability company, *Appellee*, | |
| MORTGAGES LTD., *Debtor-In Re.* | |

2          IN THE MATTER OF: MORTGAGES LTD.

| | |
|---|---|
| IN THE MATTER OF: MORTGAGES LTD., | No. 12-16293 |
| *Debtor*, | D.C. No. 2:10-cv-01917-RCJ |
| BEAR TOOTH MOUNTAIN HOLDINGS, L.L.P.; PUEBLO SERENO MOBILE HOME PARK, L.L.C.; QUEEN CREEK XVIII, L.L.C.; MORLEY ROSENFELD, M.D. P.C. RESTATED PROFIT SHARING PLAN, and/or their successsors and assigns (collectively the Rev Op Investors), | |
| *Appellants*, | |
| v. | |
| ML MANAGER LLC, | |
| *Appellee.* | |
| IN RE: MORTGAGES LTD., | No. 12-16725 |
| *Debtor*, | D.C. No. 2:12-cv-00036-RCJ |
| QUEEN CREEK XVIII, L.L.C., | |
| *Appellant*, | OPINION |
| v. | |

IN THE MATTER OF: MORTGAGES LTD.                3

ML MANAGER LLC,
                                    *Appellee.*

Appeal from the United States District Court
for the District of Arizona
Robert Clive Jones, District Judge, Presiding

Argued and Submitted
January 16, 2014—San Francisco, California

Filed November 12, 2014

Before: J. Clifford Wallace and Jay S. Bybee, Circuit
Judges, and Robert W. Gettleman, Senior District Judge.[*]

Opinion by Judge Wallace

---

[*] The Honorable Robert W. Gettleman, Senior District Judge for the
U.S. District Court for the Northern District of Illinois, sitting by
designation.

4        IN THE MATTER OF: MORTGAGES LTD.

## SUMMARY[**]

### Bankruptcy

The panel reversed the bankruptcy court's declaratory judgment that ML Manager LLC had agency authority to sell property of the bankruptcy estate of Mortgages Ltd.

Pursuant to the confirmed Chapter 11 plan of reorganization of Mortgages Ltd., a private lender for certain real estate investments in Arizona, ML Manager was the manager of the loans left in Mortgages Ltd.'s portfolio. Mortgages Ltd. raised money from investors to extend loans to real estate purchasers, secured by the purchased real estate, and acted as servicing agent for the loans and properties. The investors received pass-through fractional interests in the real estate that secured the loans and the resulting loan payments. They acquired an actual interest in each underlying loan.

Rev Op Group, a group of pass-through investors, objected to ML Manager's proposed sale of some of the loans. The bankruptcy court held that these investors had executed an agency agreement with ML Manager, which had an agency coupled with an interest that was irrevocable under Arizona law.

The panel held that the appeal from the declaratory judgment was not equitably moot because Rev Op Group sought a stay and was diligent. In addition, even though substantial consummation of the plan had occurred, the panel

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

could fashion effective relief because modification of the declaratory judgment would not inequitably affect innocent third parties, and the bankruptcy court on remand would be able to devise an equitable remedy.

The panel held that the bankruptcy court erred in concluding that Rev Op Group was bound to the agency agreements because the Group denied in its answer that its investors had signed any documents that included the agency provisions. The panel held that under the federal pleading rules, a court cannot disregard statements in a pleading unless the court specifically determines that the statement was made in bad faith under Federal Rule of Civil Procedure 11, or should be struck under Rule 12(f). Accordingly, the bankruptcy court erred in rejecting Rev Op Group's denials as implausible. The panel reversed the bankruptcy court's declaratory judgment and remanded the case.

## COUNSEL

Bryce A. Suzuki (argued), Robert J. Miller, Justin A. Sabin, Bryan Cave LLP, Phoenix, Arizona, for Appellants.

Cathy L. Reece (argued), Fennemore Craig, P.C., Phoenix, Arizona; Keith L. Hendricks and Joshua T. Greer, Moyes Sellers & Hendricks, Phoenix, Arizona, for Appellee.

## OPINION

WALLACE, Senior Circuit Judge:

Mortgages Ltd. was a private lender for certain real estate investments in Arizona. Mortgages Ltd. raised money from investors to extend loans to real estate purchasers, secured by the purchased real estate, and acted as servicing agent for the loans and properties. The investors received "pass-through" fractional interests in the real estate that secured the loans and the resulting loan payments. The pass-through investors acquired an actual interest in each underlying loan.

On June 24, 2008, Mortgages Ltd. filed for Chapter 11 bankruptcy. The company was restructured through a confirmed bankruptcy plan. Pursuant to that plan, the entity ML Manager LLC (ML Manager), the appellee here, manages and operates the loans left in Mortgages Ltd.'s portfolio. ML Manager took a $20 million loan in "exit financing" to pay for expenses related to the completed bankruptcy. The bankruptcy plan was confirmed by the bankruptcy court in May 2009.

After confirmation, ML Manager sought to sell some of the loans in Mortgages Ltd.'s portfolio. In response, a group of pass-through investors (Rev Op Group) objected to the sales. Rev Op Group and ML Manager then moved, essentially, for cross-declaratory judgments to resolve ML Manager's powers regarding Mortgages Ltd.'s portfolio.

Rev Op Group moved for partial summary judgment on the ground that because ML Manager acted as "agent" for each investor, it could not sell the properties if any investor, the "principal," objected. According to Rev Op Group, if ML

Manager sought to sell properties over its objection, the investors in Rev Op Group could simply revoke the agency. ML Manager responded that it did not have simple agency authority, revocable at will by the principal. Instead, it claimed that it held an interest in Mortgage Ltd.'s underlying loan pool, which gave ML Manager an "agency coupled with an interest," which is not revocable under Arizona law. *See Phoenix Title & Trust Co. v. Grimes*, 416 P.2d 979, 981 (Ariz. 1966) (in banc).

Simultaneously, ML Manager moved for a declaratory judgment that all investors had executed documents designating ML Manager as agent and that those agency documents had been properly transferred to ML Manager. Rev Op Group denied that it had executed the agreements. According to Rev Op Group, while its investors had signed "Subscription" and "Revolving Opportunity" agreements, the investors had not signed versions of those agreements that included a provision binding all signers to an agency relationship with ML Manager. Rev Op Group also argued that even if its members had executed the agreements that included the agency provision, the agreements were not properly assigned to ML Manager.

At a hearing on the cross-motions, the bankruptcy court requested and received supplemental briefs on whether the "plausibility" standard outlined in the then recent Supreme Court decisions of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), governed the denials made by Rev Op Group of the allegations in ML Manager's complaint.

On July 27, 2010, the bankruptcy court ruled that Rev Op Group's denials would only be accepted as true if the denials

8        IN THE MATTER OF: MORTGAGES LTD.

were plausible. On the same day, the court resolved, on the pleadings alone, both Rev Op Group's motion for partial summary judgment and ML Manager's motion for a declaratory judgment. The bankruptcy court held that Rev Op Group's denials were implausible, because Rev Op Group admitted the investors had signed documents with the same name as those that included agency agreements. Because the denials were implausible, the bankruptcy court held that the Rev Op Group investors had executed the agency agreement with ML Manager. The bankruptcy court also denied Rev Op Group's motion for partial summary judgment, ruling that ML Manager had an agency coupled with an interest and that ML Manager was properly assigned the agency agreements.

Thus, after this "Declaratory Judgment," ML Manager had irrevocable authority, subject to possible review by the bankruptcy court under a "business judgment" standard, to sell or liquidate the interests in property of any investors, including objecting investors like the Rev Op Group, foreclose on property of the estate, modify the terms of the outstanding loan properties, and recover costs and expenses from all investors.

Armed with this order, ML Manager moved to sell two properties in the portfolio. On August 30, 2010, Rev Op Group moved to stay the Declaratory Judgment. The motion to stay was denied by the bankruptcy court on September 10, 2010, because the bankruptcy court concluded that ML Manager needed to liquidate the properties for the benefit of all investors, who would suffer serious harm if the orders were stayed unless Rev Op Group paid a large bond as security. Rev Op Group stated that it could not afford such an expensive bond. Rev Op Group appealed the denial of the

motion to stay to the district court, which affirmed the bankruptcy court on October 12, 2010.

In March and November of 2011, ML Manager moved to sell two other properties pursuant to the Declaratory Judgment. The bankruptcy court overruled Rev Op Group's objections and approved the property sales.

Rev Op Group appealed from all of these orders to the district court. On January 10, 2012, the district court affirmed the bankruptcy court's order approving one of the property sales, and held that ML Manager had an agency coupled with an interest and had properly applied its business judgment.

On February 15, 2012, having previously concluded that ML Manager held an agency coupled with an interest, the district court affirmed the rest of the bankruptcy court's Declaratory Judgment. The district court held that Rev Op Group's denials that investors had executed the agreements attached to ML Manager's declaratory judgment complaint were a "sham" and thus should be disregarded. The district court also affirmed that the agency agreements were properly assigned to ML Manager.

On May 2 and July 6, 2012, the district court affirmed the other property sales based upon its prior rulings regarding ML Manager's irrevocable agency authority, proper assignment, and Rev Op Group's sham denials of executing the agency agreements.

Rev Op Group filed timely notices of appeal from each district court order.[1] In this opinion, we address only its appeal of the Declaratory Judgment. We have appellate jurisdiction under 28 U.S.C. § 158(d)(1).

## I.

ML Manager moves to dismiss this appeal as equitably moot. Although we dismiss Rev Op Group's appeals from the sales orders as equitably moot in a concurrently filed memorandum disposition, we must separately examine this appeal to determine whether to dismiss it as equitably moot. *In re Filtercorp, Inc.*, 163 F.3d 570, 577–78 (9th Cir. 1998) (holding that an appeal from a sale order was moot, but the appeal from a related order was not moot); *In re AOV Indus., Inc.*, 792 F.2d 1140, 1147–48 (D.C. Cir. 1986) (holding that to determine equitable mootness, "a court cannot avoid its obligation to scrutinize each individual claim, testing the feasibility of granting the relief against its potential impact on the reorganization scheme as a whole"). We analyze whether each appeal is equitably moot separately because awarding relief to the appellant in one appeal may threaten the equitable disposition of the bankruptcy estate, but awarding relief in another may pose no harm to the estate or third parties.

---

[1] We resolve Rev Op Group's appeals of the property sales in a concurrently filed memorandum disposition. *Rev Op Grp. v. ML Manager LLC*, Nos. 12-15229, 12-15438, 12-16293 & 12-16725. We also publish with this Opinion an Opinion in other Rev Op Group appeals from the "Clarification Order" and "Distribution Order." *Rev Op Grp. v. ML Manager LLC*, Nos. 12-15234 & 12-15459.

We examine four considerations to determine whether the appeal from the Declaratory Judgment is equitably moot.

> We will look first at whether a stay was sought, for absent that a party has not fully pursued its rights. If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred. Next, we will look to the effect a remedy may have on third parties not before the court. Finally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court.

*In re Thorpe Insulation Co.*, 677 F.3d 869, 881 (9th Cir. 2012).

1.

Unlike in *Rev Op Group v. ML Manager LLC*, Nos. 12-15234 & 12-15459 and *In re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir. 1981), Rev Op Group sought a stay of the Declaratory Judgment, but could not obtain it. Rev Op Group thus did not sit on its rights. It diligently pursued this appeal. Though Rev Op Group could not obtain a stay from the bankruptcy or district court because of the high cost of the bond necessary to secure the appeal, we are cautious about not giving a party who is diligent – as Rev Op Group has been in this case – an opportunity to present its appeal. *Thorpe*, 677 F.3d at 881.

2.

We next turn to whether substantial consummation of the plan has occurred. *Id.* at 882. We conclude that it has. "Substantial consummation" as defined in the Bankruptcy Code means:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). We clarify that the "transfers" referenced in subsection (A) differ from the "distributions" referenced in subsection (C). Subsection (A)'s "transfers of property" are those that are necessary to accomplish reorganization and to shape the new financial structure of the debtor. Such transfers often take place on or shortly after the effective date of a confirmed plan and may include the transfer of a security interest to unsecured creditors, a transfer of stock to creditors or third parties, a transfer of promissory notes to creditors, transfers of property to secured creditors in satisfaction of their claims, or transfers of property by third parties to the debtor. *See Antiques of Nev., Inc. v. Bala Cynwyd Corp.* (*In re Antiques of Nev., Inc.*), 173 B.R. 926, 929–30 (B.A.P. 9th Cir. 1994). Subsection (C)'s

"distributions," on the other hand, are payments to creditors in satisfaction of the debtor's debts. "Substantial consummation" requires completion or near completion of the former, but only commencement of the latter. *Id.*

Here, with respect to subsection (A), the plan proposed various reorganizational transfers of property, including transfer of non-loan assets and stock in the reorganized debtor to the liquidating trust. All or substantially all of the property proposed by the plan to be transferred was transferred shortly after the plan was confirmed. Subsection (B) was satisfied when ML Manager undisputedly assumed management of all or substantially all of the property dealt with by the plan. Subsection (C) was satisfied once ML Manager commenced distribution of property to creditors, both from exit financing funds and from liquidated property. We therefore conclude that the plan was "substantially consummated" under 11 U.S.C. § 1101(2).

Substantial consummation of a bankruptcy plan often brings with it a comprehensive change in circumstances that renders appellate review of the merits of the plan impractical. *First Fed. Bank of Cal. v. Weinstein* (*In re Weinstein*), 227 B.R. 284, 289 (B.A.P. 9th Cir. 1998). But this is not always the case. Thus, "the fact that a plan is substantially consummated . . . does not, by itself, render an appeal moot." *Id.* We must still consider whether, despite substantial consummation, we can fashion effective relief. *Id.* To do so, we analyze the final two factors from *Thorpe*.

3.

Therefore, we next consider "whether modification of the plan of reorganization would bear unduly on the innocent."

*Thorpe*, 677 F.3d at 882 (internal quotation marks omitted). Unlike in the companion case, modification of the Declaratory Judgment would not "affect third party interests to such an extent that the change is inequitable." *Id.* Regardless of whether we reverse the legal basis for the sales, Rev Op Group could not disturb past sales because we have dismissed the appeals of the sale orders. If we were now to reverse the Declaratory Judgment, we would alter ML Manager's ability to act as agent for objecting investors like Rev Op Group, but that would only affect *prospective* sales of property to third parties, and perhaps *prospective* distributions. That would not unduly bear on innocent third parties.

4.

Finally, "and most importantly," we look to whether the bankruptcy court on remand would be able to devise an equitable remedy. *Id.* at 883. If we reversed the Declaratory Judgment on any of the bases Rev Op Group argues were erroneous, the bankruptcy court could proceed to discovery on whether Rev Op Group's denials were legally sufficient, or require ML Manager to act with Rev Op Group's consent, or require that ML Manager properly transfer the agency agreements. This would be equitable, if "incomplete," relief that would not "totally [] upset the [bankruptcy] plan." *Id.*

The appeal of the Declaratory Judgment is not equitably moot. Unlike in the companion case, Rev Op Group diligently pursued its rights by seeking a stay of the Declaratory Judgment Order, even though it was unable to obtain the stay. Although substantial consummation of the bankruptcy plan has occurred, modification of the order would not inequitably affect innocent third parties. Moreover,

"there are many options open to the bankruptcy court other than complete plan reversal that can remedy some of [Rev Op Group's] claims if proved valid." *Id.*

## II.

Rev Op Group challenges the Declaratory Judgment on three grounds. First, Rev Op Group argues that the bankruptcy court erred in subjecting its denials that its investors had signed the agency agreements to a "plausibility standard," and then rejecting those denials as implausible. Second, Rev Op Group argues that even if the denials were implausible and the court properly determined that Rev Op Group was subject to the agency agreements, ML Manager does not hold an irrevocable agency power. Third, Rev Op Group argues that the bankruptcy court erred in holding that the agency agreements were properly transferred to ML Manager.

We review legal decisions of the bankruptcy court de novo, and without deference to the district court's decisions during the initial appeal. *In re Cossu*, 410 F.3d 591, 595 (9th Cir. 2005). We also review a judgment on the pleadings de novo, and affirm if, taking all factual allegations in Rev Op Group's pleadings as true, ML Manager is entitled to judgment as a matter of law. *Marshall Naify Revocable Trust v. United States*, 672 F.3d 620, 623 (9th Cir. 2012).

The bankruptcy court erred in concluding that Rev Op Group is bound to the agency agreements, because Rev Op Group had denied in its answer that its investors had signed any documents that included the agency provisions. Under the federal pleading rules, which apply to adversary proceedings in bankruptcy court, *see* FED. R. BANKR. P.

7008(a), a court cannot disregard statements in a pleading unless the court specifically determines that the statement was made in bad faith under Federal Rule of Civil Procedure 11, or should be struck under Rule 12(f). *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859–60 (9th Cir. 2007). A court can only disregard statements in a pleading under Rule 11 if the court "invoke[s] the rule's procedural safeguards" and "employ[s] the rule's substantive standard . . . that [the party or its counsel] acted in bad faith." *Id.* at 859. A court can only strike a statement in a pleading under Rule 12(f) if the statement is "(1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010), *citing* FED. R. CIV. P. 12(f).

The bankruptcy court here followed neither Rule 11 nor Rule 12(f). In its Declaratory Judgment, the court did not invoke the procedural safeguards of Rule 11, or determine that the denials were made in bad faith. Nor can Rev Op Group's denials be properly struck under Rule 12(f). The bankruptcy court never cited Rule 12(f) or its bankruptcy rule equivalent. Additionally, Rev Op Group's denials *were* a sufficient defense to ML Manager's complaint, because if the denials are true, Rev Op Group would not be bound to the agency agreement pleaded by ML Manager. Rev Op Group's denials were not redundant, immaterial, impertinent or scandalous.

Though we review only the bankruptcy court's order, not the district court's affirmance, *Cossu*, 410 F.3d at 595, we point out that the district court's similar disregard for the denials was also erroneous. The district court held that Rev Op Group's denials were "simply untenable" and "obviously"

"frivolous and a sham," citing our decision in *Harvey Aluminum (Inc.) v. NLRB*, 335 F.2d 749, 758 (9th Cir. 1964).

In *Harvey Aluminum*, the National Labor Relations Board (NLRB) brought an administrative action against a company, Harvey Aluminum, for a violation of the National Labor Relations Act. *Id.* at 751. The NLRB also sued General Engineering, a company the NLRB alleged was "affiliated" with Harvey Aluminum, and thus could be treated as a "single employer" with Harvey Aluminum, both subject to the NLRB's jurisdiction. *Id.* at 757. In its answer to the complaint, General Engineering denied the information in the complaint, but offered no factual allegations to challenge the NLRB's pleading. *Id.* The NLRB trial examiner ruled that the failure to respond "would be taken as a concession that the relationship between Harvey [Aluminum] and General [Engineering] during the relevant period was such that they might properly be treated as a single employer." *Id.* General Engineering appealed this ruling, and we affirmed.

Under the federal regulations governing NLRB administrative actions, an answer to a complaint had to be signed by the respondent's attorney, and if it is not signed or "is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the answer had not been served." *Id.* at 757 n.31, *quoting* 29 C.F.R. § 102.21. We compared the federal regulation to "comparable provisions of the Federal Rules of Civil Procedure," including what was then the "essentially identical" Rule 11. *Id.* at 758 & n.32. We stated that under the comparable Federal Rules, "an answer asserting want of knowledge sufficient to form a belief as to the truth of facts alleged in a complaint does not serve as a denial if the assertion of ignorance is obviously sham," and that "[i]n such

circumstances the facts alleged in the complaint stand admitted." *Id.* at 758. Thus, we held that the trial examiner was justified under the federal regulation in refusing to accept "clearly frivolous" statements in an answer. *Id.*

In 1964, Rule 11 was "essentially identical" to 29 C.F.R. § 102.21, stating that if a pleading "is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served." *See Ely Valley Mines, Inc. v. Lee*, 385 F.2d 188, 191 n.1 (9th Cir. 1967), *quoting* FED. R. CIV. P. 11. Our sister circuits and treatises thus correctly understood our holding in *Harvey Aluminum* as authorizing both NLRB trial examiners and federal courts applying the federal rules to disregard statements in answers when the statements were "obviously sham." *See Am. Photocopy Equip. Co. v. Rovico, Inc.*, 359 F.2d 745, 747 (7th Cir. 1966); 5 Charles Alan Wright & Arthur R. Miller, *et al.*, Fed. Prac. & Proc. Civ. § 1262 n.13 (3d ed.).

But Rule 11 is no longer "essentially identical" to 29 C.F.R. § 102.21. In 1983, the Rule 11 provision that authorized district courts to "strike pleadings . . . as sham and false . . . was eliminated." *PAE Gov't*, 514 F.3d at 859 n.3. One of the purposes of eliminating that provision was to stop decisions that "'tended to confuse the issue of attorney honesty with the merits of the action.'" 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1336.3 (3d ed.), *citing* Advisory Committee Note to the 1983 amendments, *reprinted at* 97 F.R.D. 165, 199. After the 1983 amendments to Rule 11, "absent a finding of bad faith, factual allegations in the complaint (*or answer*) must be tested through the normal mechanisms for adjudicating the merits." *PAE Gov't*, 514 F.3d at 859 n.3 (emphasis added). Thus, our

suggestion in *Harvey Aluminum* that a district court has "free-standing authority to strike pleadings simply because" it believes them to be a sham is no longer valid. *See PAE Gov't*, 514 F.3d at 859.[2] Instead, the "district court's powers are generally limited to those provided by the Federal Rules of Civil Procedure." *Id.* The district court erred in holding that Rev Op Group's denials of the allegations in ML Manager's complaint were a sham without using "the mechanism for doing so," which is Rule 11. *Id.*

In sum, courts cannot examine statements in an answer or other pleading and decide, on the basis of their own intuition that the statements are implausible or a sham and thus can be disregarded. Factual allegations in a pleading, as opposed to legal conclusions, must be presumed to be true. *Twombly*, 550 U.S. at 555. Both the bankruptcy and district court erred here by "effectively resolv[ing] those allegations" in Rev Op Group's denials "on the merits," instead of reviewing them for legal sufficiency. *PAE Gov't*, 514 F.3d at 858.

Perhaps Rev Op Group's denials are implausible. Perhaps the denials should be deemed a sham under Rule 11. But the bankruptcy court did not find that the denials were made in bad faith, nor were the denials liable to be stricken under Rule 12(f). We reiterate that in the absence of any such findings, "factual allegations in the complaint (or answer) must be tested through normal mechanisms for adjudicating the merits." *Id.* at 859 n.3. We reverse the bankruptcy court's determination in its Declaratory Judgment that each member

---

[2] The text of 29 C.F.R. § 102.21 has not changed since 1964, so our holding in *Harvey Aluminum* is still authoritative in the context of administrative actions brought by the NLRB.

20          IN THE MATTER OF: MORTGAGES LTD.

of the Rev Op Group had executed the agency agreements, and was "to be bound to" those agreements.

**REVERSED AND REMANDED.**



**12-15229 Rev Op Group v . ML Manager LLC "Mandate Issued "**

ca9_ecfnoticing    to:                                    12/05/2014 04:34 PM

From:    ca9_ecfnoticing@ca9.uscourts.gov

To:

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

United States Court of Appeals for the Ninth Circuit

Notice of Docket Activity

The following transaction was entered on 12/05/2014 at 3:32:41 PM PST and filed on 12/05/2014

Case Name:    Rev Op Group v. ML Manager LLC

Case Number:    12-15229

Document(s):    Document(s)

Docket Text:
MANDATE ISSUED.(JCW, JSB and RWG) Costs taxed against Appellee in the amount of $3698. [9339298] [12-15229, 12-15438, 12-16293, 12-16725] (SW)

Notice will be electronically mailed to :

Stephen Brower, Attorney
Joshua T. Greer, Attorney
Mr. Keith L. Hendricks, Attorney
Mr. Robert J. Miller
Cathy L. Reece, Director
Justin A. Sabin
Mr. Bryce A. Suzuki
USDC, Phoenix

The following document(s) are associated with this transaction :
Document Description: Mandate Order
Original Filename:
/opt/ACECF/live/forms/SynithaFuller-Walker_1215229_9339298_v2Order-Mandate_216.pdf
Electronic Document Stamp:
[STAMP acecfStamp_ID=1106763461 [Date=12/05/2014] [FileNumber=9339298-0]
[7a06bd1ad4871619d80809982d3db8ea911a9a80305dcde3e4e203fbc54647f2b83eb78c7d409ca74e906
50ffdab70d62b9dda3e5f6bcb114dcd3f1e580eab4f]]
Recipients:
● Stephen Brower, Attorney
● Joshua T. Greer, Attorney

- Mr. Keith L. Hendricks, Attorney
- Mr. Robert J. Miller
- Cathy L. Reece, Director
- Justin A. Sabin
- Mr. Bryce A. Suzuki
- USDC, Phoenix

The following information is for the use of court personnel:

DOCKET ENTRY ID: 9339298
RELIEF(S) DOCKETED:
DOCKET PART(S) ADDED: 10405816